Sebastian M. Medvei (SBN 285604)
MEDVEI LAW GROUP, APC
3857 Birch Street, #56
Newport Beach, CA 92660
Telephone: (213) 984-4013
Email: smedvei@medveilaw.com

Attorney for Defendant
AVOCADO MATTRESS LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY ISLAS and ELIZABETH AMILL, each individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AVOCADO MATTRESS LLC,<br><br><br>Defendant. | Case No.: 2:25-cv-05698-RGK-PVC<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT AVOCADO MATTRESS LLC TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM IN SUPPORT THEREOF; DECLARATION OF SEBASTIAN M. MEDVEI PER LR 7-3; CERTIFICATE OF WORD COUNT**<br><br>**Hearing Date: December 29, 2025<br>Time: 9:00 a.m.<br>Judge: Hon. R. Gary Klausner**<br><br>**Location:<br>United States District Court Edward R. Roybal Federal Building 255 E Temple St<br>Courtroom 850, 8th Floor<br>Los Angeles, CA 90012** |

1

MOTION TO DISMISS; MEMORANDUM ISO; DECLARATION RE LR 7-3

**TO THE ABOVE-CAPTIONED COURT, PLAINTIFFS AND THEIR ATOTRNEYS OF RECORD:**

Please take notice that on December 29, 2025 at 9:00 a.m. in Courtroom 850 of the above-captioned Court located at 255 E Temple St, Los Angeles, CA 90012, Defendant AVOCADO MATTRESS LLC ("Defendant") will move to dismiss the First Amended Complaint (FAC) of Plaintiffs ASHLEY ISLAS ("Ms. Islas"), ELIZABTH AMILL ("Ms. Amill"), and MATEO PETTYJOHN ("Mr. Pettyjohn") (collectively, "Plaintiffs") pursuant to Federal Rules of Civil Procedure rule ("FRCP") 12(b)(6) for failure to state a claim upon which relief can be granted. The motion is made on the following grounds.

Each of the causes of action fail to state a claim because the Plaintiffs have failed to set forth the *actual value* of the products in question and, as a corollary, each of the causes of action fail because the Plaintiffs lack standing as they have not articulated any cognizable loss or injury as a result of the alleged practices. Further, each of the causes of action fail because Defendants' alleged conduct is protected by the First Amendment and Article 1 of the California Constitution.

Defendant respectfully requests that the motion to be dismiss be granted without leave to amend.

Dated November 24, 2025

Respectfully Submitted,

MEDVEI LAW GROUP, APC

By:    /s/ Sebastian M. Medvei

Sebastian M. Medvei

Attorney for Defendant

MOTION TO DISMISS; MEMORANDUM ISO; DECLARATION RE LR 7-3

## MEMORANDUM IN SUPPORT THEREOF

## I.    INTRODUCTION

Plaintiffs allege numerous causes of action, all of which flow from a single theory. Plaintiffs claim that Defendants' markdowns for the products purchased by the Plaintiffs are not actually sales prices because those products are allegedly not sold at the advertised higher "full price" within a period of 90 days preceding the markdown. Assuming that general theory, and everything else alleged in the Complaint is true, Plaintiffs fail to state a claim because they have not alleged the most important ultimate fact needed to complete their theory: that the "actual worth or value" of the relevant product, itself, is less than the price paid by the Plaintiffs. In other words, even if Plaintiffs bought relevant products on a "fake sale" the critical question for standing, reliance and causation, as to all of the claims, is whether the relevant products are actually worth less than the "fake sale" price. If the products are worth more than they paid, Plaintiffs got *more* than what they bargained for. Nowhere in the FAC do Plaintiffs allege that the relevant products they purchased are worth less than they paid for them and, candidly, it is unlikely that the Plaintiffs can amend the FAC to truthfully allege this. This issue permeates every single cause of action alleged by the Plaintiffs in the FAC and, as a corollary, reflects on the unconstitutional nature of the free speech prohibitions that are posed by the theory that each of the causes of action in the Plaintiffs' FAC are based on. Because the Plaintiffs received products that were worth more than that what they paid for them and because the FAC imposes an arbitrary free speech prohibition that does not support any substantial government interest such that it violates the U.S. and California constitutions, the motion to dismiss should be granted.

/ / /

/ / /

/ / /

MOTION TO DISMISS; MEMORANDUM ISO; DECLARATION RE LR 7-3

## II.     DISCUSSION

## A.     EACH OF THE CAUSES OF ACTION FAIL TO STATE A CLAIM BECAUSE PLAINTIFFS HAVE FAILED TO ALLEGE THE ACTUAL VALUE OF THE PRODUCTS IN QUESTION

Each and every cause of action alleged by the Plaintiffs in the FAC require that the Plaintiffs suffered an articulable injury to obtain standing to sue. *See e.g.* Cal. Code of Civil Procedure § 367 (real party in interest requirement); Civil Code § 1780(a); Bus. & Prof. Code §§ 17204, 17535. Thus, the Plaintiffs must plead some "concrete and particularized injury" that they suffered for which compensation may be given. *Limon v. Circle K Store Inc.* (2022) 84 Cal. App. 5th 671, 697-700.

Reading the Plaintiffs' FAC in the most generous way possible, Plaintiffs allege that they would not have bought the relevant products, if they had known that the markdown price was allegedly not an actual discount to the value of the products over the relevant time period—in this case, over the course of the 90 days preceding the Plaintiffs' respective purchases of the products. *See e.g.* FAC p.47:20-27 [ECF 17]. The critical question for this theory is *what* the "worth or value" of the respective products was at the time of purchase by the Plaintiffs. If the price the Plaintiffs allegedly paid was less than the actual "worth or value" of the product, Plaintiffs received a discount and were not injured, and as relevant to Defendant's argument herein, this is true regardless of *how long* the products were marked down.

Business & Professions Code section 17501 defines "worth or value" as follows: "For purposes of this article the worth or value of any thing advertised is the *prevailing market price*, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published." Bus. & Prof. Code § 17501 [emphasis added]. California courts have consistently interpreted this provision, and specifically the

4

MOTION TO DISMISS; MEMORANDUM ISO; DECLARATION RE LR 7-3

notion of the prevailing market price, in tandem with statutory provisions dealing with repudiated purchases and sales in the California Commercial Code, which specifically governs the purchase and sale of all goods, including the products at issue in the FAC. *People v. Sup. Ct. (J.C. Penney Corp., Inc.)* (hereafter, "*J.C. Penney Corp., Inc.*") (2019) 34 Cal. App. 5th 376, 411 (the terms "market" and "prevailing market price" have "long been used in the California Uniform Commercial Code to state a specific measure of damages relating to failed sales transactions [Citation.]."). The prevailing market price is essentially the fair market value of the item. *Id.* 396 (citing 30 Ops. Cal. Atty. Gen. 127, 129 (1957)).

Indeed, and instructive here as to all of Plaintiffs' causes of action, the California Commercial Code sets forth the measure of damages to a buyer in a failed transaction as follows: "[T]he measure of damages for nondelivery or repudiation by the seller is the difference between the *market price* at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this division (Section 2715), but less expenses saved in consequence of the seller's breach." Com. Code § 2713(1) [emphasis added]. In other words, the measure of damages is based on the difference between the price paid plus incidentals and the market price at the time of the claimed loss (i.e. the cost to replace the item for the disappointed buyer). *Id.* If the prevailing market price is less than the amount the buyer paid, there are no damages because the buyer will save money replacing the originally purchased item. *Id.* The amount of the difference between the prevailing market price and the price paid by the Plaintiffs, thus, is the critical element in establishing any damages, and therefore injury, to the Plaintiffs. *Id.*

Here, at the outset, the FAC contains no specific factual allegation sufficient to give "fair notice" to Defendant as to what the actual market price of each of the relevant products was at the time of Plaintiff's alleged purchases. *Ashcroft v. Iqbal* (2009) 556 US 662, 680-681. This is particularly problematic here because the

FAC alleges fraud, and each cause of action sounds in fraud, such that the *heightened pleading requirements* of FRCP 9(b) clearly apply. This inadequacy in pleading under the heightened standard is, itself, grounds for granting the motion.

Instead, Plaintiffs broadly allege that: "Defendant advertised regular prices that are not its true regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement." FAC 31:20-22. Based on this allegation and the similar allegations throughout the FAC, it is simply not possible to conclude whether the Plaintiffs are "entitled to relief," FRCP 8(a)(2), because there are no factual allegations as to *the amount* of the prevailing market price for the relevant products at any relevant time period, none the least at the time of the respective purchases by the Plaintiffs. Merely alleging, as here, that the markdown was "fake" without alleging that the markdown price was actually higher than what the product was actually worth, provides insufficient information for purposes of alleging an injury. Indeed, if the "prevailing market price" was actually higher than what the Plaintiffs paid for the products, the Plaintiffs saved money and there is no injury (and the Plaintiffs lack standing).

Moreover, for purposes of establishing *damages* for purposes of conferring the required standing on the Plaintiffs, the Plaintiffs must allege, with particularity, that the "prevailing market price" was actually *less* than what Plaintiffs paid for the respective products, or in the context of a "lost discount," that the prevailing market price was *equal* to the price Plaintiffs paid. Plaintiffs simply fail to do either. Though in some places in the FAC the Plaintiffs broadly allege that they "overpaid" for the products such legal conclusions are insufficient and are disregarded when assessing a complaint—the Plaintiffs must set forth *how much* they overpaid for the products they are complaining about. *Ashcroft v. Iqbal*, *supra*, 556 US at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Because the FAC fails to state what the "prevailing market price" was for any of the relevant products

6

purchased by Plaintiffs at the time of the alleged purchase, or at any time for that matter, the Plaintiffs have failed to allege an indispensable element of their claim, that is, any *damages*. Without damages, the Plaintiffs are not injured and do not have standing. Therefore, this motion to dismiss may be granted on this ground, alone.

## B.    DEFENDANT'S ALLEGED CONDUCT IS PROTECTED BY THE FIRST AMENDMENT OF THE CONSTITUTION AND THE CALIFORNIA CONSTITUTION

As set forth above, all of Plaintiffs' causes of action are premised on the assertion that the Defendant's sale prices are not actually sale prices because the products are allegedly sold at the sale price for a very long time and, in any event, longer than three months, such that the products are only worth the sale price and not the higher value that the Defendant claims in the context of the markdown. This theory is essentially derived from the second paragraph of Business & Profession Code section 17501, which states: "No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Bus. & Prof. Code § 17501.

California courts have already recognized the serious free speech violations raised by Section 17501 but have had not had occasion to make a final determination as to those issues because of a lack of argument presented as to whether Section 17501 is narrowly tailored to directly benefit a substantial interest. *J.C. Penney Corp., Inc.*, *supra*, 34 Cal. App. 5th at 398-399. In *J.C. Penney Corp., Inc.*, the Court of Appeal explained that Business & Professions Code section 17501 "by its plain terms . . . forbids certain common forms of truthful price advertising – and thus restricts significant amounts of protected commercial

7

MOTION TO DISMISS; MEMORANDUM ISO; DECLARATION RE LR 7-3

speech." *J.C. Penney Corp., Inc.*, *supra*, 34 Cal. App. 5th at 391. More specifically, the statute restricts "commercial free speech" as protected by both the First Amendment and the California Constitution, Article I § 2, because it prohibits sellers from making *truthful* assertions about a seller's own past prices, unless that past price was the "prevailing market price" of the product within the prior 90 days. *Id.* at 396. In other words, like here, a seller can be punished under Section 17501 for merely stating a *true* fact in their advertising, the fact that a product sold at a different price in the past, or relatedly, for stating an opinion as to what the seller *believes* a product is really worth in the market, just because the statement refers to an actual past price that was used more than 90 days prior to the markdown. *Id.*

Having established that the statute inevitably restricts lawful free and truthful speech about one's own products, the question, then, is whether Business & Professions Code section 17501, and a legal theory entirely premised on its prohibitions as proffered by the FAC, "is an invalid regulation of commercial speech." *Id.* at 398. The analysis is whether the statute directly addresses a substantial government interest and whether the statute is narrowly tailored to achieve that objective. *Id.* at 398; see also *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York* (1980) 447 US 557, 564-566. Business & Professions Code section 17501 fails on both of those grounds.

The Legislature clearly intended to distinguish Section 17501 from false advertising under Business & Professions Code section 17500, the latter of which requires that the character of the false advertising as untrue or misleading be "known" or, "which by the exercise of reasonable care should be known" by the perpetrator, i.e. it requires some level of culpability. Bus. & Prof. Code § 17500. By contrast, nothing suggests "the existence of a legislative intent to focus section 17501 exclusively on false, misleading, and deceptive commercial speech." *J.C. Penney Corp., Inc.*, *supra*, 34 Cal. App. 5th at 396. Indeed, because Business &

8

MOTION TO DISMISS; MEMORANDUM ISO; DECLARATION RE LR 7-3

Professions Code section 17500 already addresses false or misleading statements about products, including, as relevant here, alleged misleading statements as to the value of a product, the Legislature could *not* have intended Business & Professions Code section 17501 to serve that redundant purpose. *Id.* at 396-397.

Eliminating the understandable substantial interest in regulating false or untrue advertising from Business & Professions Code section 17501, because that interest is already covered by Business & Professions Code section 17500, the only interest left for Section 17501 to apparently advance is an interest in ensuring that markdowns do not last longer than 90 days. There, however, is simply no cognizable government interest in making sure that price differentials do not last a single day over 90 days (as opposed to say, 30 or 120 days) because the *length* of a markdown is not determinative of *why* a product is marked down. *Id.* at 399 ("In view of the broad sweep of the prohibition contained in the statute, we question whether an adequate justification exists for the prohibition.").

At best any such interest in the timing of sales is nonexistence or *trivial*, if not nonsensical and diametrically opposed to realistic notions of supply and demand. Even the most elementary understanding of economics tells us that if there is one thing that is an economic certainty, it is that over time prices tend to go *up* due to inflation, regardless of temporary sales and markdowns. A seller that sells the same thing for the same price for a long period of time, whether it is at a "fake sale price" or some other price, is *losing* value due to inflation if it does not, every so often, raise prices. Thus, any interest in regulating prices must address *why* a product is being sold at a given price, not merely for how long. Because Section 17501 does not care *why* something is on sale, it simply cannot, logically, ever be found to be "narrowly tailored" to any cognizable important interest. *J.C. Penney Corp., Inc.*, *supra*, 34 Cal. App. 5th at 396-397 ("Given the prohibition's grammatical structure, it is impossible to impose that qualification simply by inserting the phrase, 'false, misleading, or deceptive' somewhere in the prohibition.").

In fact, forcing a seller to adjust their protected speech as to the full price *worth* of an item being marked down, i.e. dictating to a seller what their opinion of the value of their own products should be, merely based on the length of a markdown, can actually *mislead* consumers and generate unfair competitive advantages between competitors, not to mention higher prices.

One example, of the numerous examples that abound in support of the argument that Section 17501 is unconstitutional, would be a ski retailer in Southern California. For 90 days of the year in the winter, the demand for skis is, obviously, higher than the remainder of the year when the local slopes might not have as much snow, or any snow, for that matter. Because there is ample demand during the winter, the ski retailer can sell the skis at "full price" without the need for any markdowns to spur demand. However, for the rest of the year, because the demand drops dramatically as the snow melts, the retailer must sell the skis at a discount to make enough sales to pay the ski retailer's employees and the rent for the shop in the off season. Thus, for about 270 days out of the year, the ski retailer, understandably, sells the skis at a 20% markdown, which is the bear minimum profitable margin for the ski retailer, and, those 20% markdowns are advertised with reference to the winter price of the skis so that consumers understand that the price in the off season is a *discounted* price and not a publication of the ski retailer's opinion as to the worth of the skis in the winter. And, when winter starts again, the markdowns are removed and the skis simply just go back to their full price. In doing so, depending on the length of the snowy season, typically by the month of June, the ski retailer is violating Section 17501 because the skis have been marked down for over 90 days.

The next year, the ski retailer learns of Section 17501 and to avoid serial class action lawsuits, instead of marking down the skis after winter, the ski retailer simply lowers the price of the skis to the minimum margin price without simultaneously adverting that the price is marked down by 20%, i.e. without

MOTION TO DISMISS; MEMORANDUM ISO; DECLARATION RE LR 7-3

identifying the full winter price of the skis with a strikethrough. By lowering prices, the ski retailer is, thankfully, able to make ends meet during the summer but when winter hits, the ski retailer, rationally, decides to put the price of the skis back to full price because of the anticipated substantial increase in demand. However, much to the ski retailer's chagrin, the consumers who bought the skis during the offseason spread the word that the *full price* for the skis was the price that the skis were being sold for during the offseason, and not markdowns. In other words, the ski retailer's cautious compliance with Section 17201 *misled* consumers to falsely believe that the ski retailer's *full price* for the skis had gone down. And, naturally, when those winter buyers come to believe that the ski retailer has, now, *raised* the price of the skis a whopping 20% at the start of winter, they decide that the ski retailer is a "price gouger" and go elsewhere. The end result being that, by complying with Section 17501, the ski retailer ends up selling less skis at full price even though the ski retailer is selling those skis for the same full price it did every prior year.

The above example demonstrates that whatever interest being advanced by Section 17501, if there is any such cognizable interest, is neither important nor narrowly tailored because despite the ski retailer's offseason published markdowns being truthful as to the full price of the skis during the winter, Section 17201 *forced* that ski retailer to *mislead* its customers to believe that its offseason price is the actual value of the skis. In other words, the Southern Californian ski retailer was punished, inter alia, simply because the seasonal price fluctuations in that industry don't fit cleanly into units of 90 days. Price advertisements matter and keeping information away for consumers just because the information is over 90 days old has no benefit to society.

Moreover, everyone knows that the worth of something is not *solely* dictated by its marketed price at any given time. Just because you can get a good price for a thing due to specific supply and demand factors at play at any given time, doesn't

MOTION TO DISMISS; MEMORANDUM ISO; DECLARATION RE LR 7-3

mean that is what the thing is worth, and it certainly does not mean that it is the
"prevailing market price." By the same token, even something being sold at "full
price" (which is, perhaps, an equally arbitrary designation as a "sale price") can be
worth more than what it is being sold for, i.e. a seller's full price can be less than
the prevailing market price for the same or comparable products for all manner of
reasons. Because Section 17501 and the derivative arbitrary and unconstitutional
restriction of commercial speech advanced by the allegations of the FAC regulate
a seller's truthful speech based solely on the length of time a product is sold at a
particular price, they meaninglessly conflate the price of the product with the value
of the product, even though the two are not always the same. Indeed, if price and
value *were* always the same, the concept of a "sale" or a "discount" couldn't exist
in the first place. Business & Professions Code section 17501 and, derivatively,
the legal theory advanced by each of the causes of action in the FAC, thus,
logically, could *never* directly advance any cognizable important interest in a
narrowly tailored fashion and actually constitute unconstitutional restrictions on
commercial free speech. Therefore, the motion to dismiss should be granted.

## III.    CONCLUSION

Based on all of the foregoing, Defendant respectfully requests that the
motion to be dismiss be granted in full as to each of the causes of action pled in the
FAC and that leave to amend be denied.


Dated: November 24, 2025            Respectfully Submitted
                                    MEDVEI LAW GROUP, APC

                        By:    */s/* Sebastian M. Medvei
                               Sebastian M. Medvei
                               Attorney for Defendant

MOTION TO DISMISS; MEMORANDUM ISO; DECLARATION RE LR 7-3

## <u>DECLARATION OF SEBASTIAN M. MEDVEI PER LR 7-3</u>

I, Sebastian M. Medvei, hereby declare:

1.    I am an attorney duly licensed to practice law in the State of California and before this Court.

2.    I have personal knowledge of the matters set forth herein, and if called upon to testify thereto, could and would do so competently.

3.    I am the attorney of record for the Defendant.

4.    Prior to filing this motion, I held a meet and confer conference with Plaintiffs' counsel, Jonas Jacobson, as required by Local Rule 7-3. The conference took place on the telephone on various dates, including most recently on November 12, 2025. The parties' counsel discussed the issues advanced by this Motion and Plaintiffs' counsel did not agree that Defendant's counsel's arguments.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed November 24, 2025 at Newport Beach, California.

/s/ Sebastian M. Medvei

Sebastian M. Medvei

MOTION TO DISMISS; MEMORANDUM ISO; DECLARATION RE LR 7-3

## **CERTIFICATE OF WORD COUNT**

The undersigned, counsel of record for Defendant, certifies that this brief contains 4,157 words, which complies with the word limit of LR 11-6.1.

Dated November 25, 2025                    Respectfully Submitted,

                                           MEDVEI LAW GROUP, APC

                              By:    /s/ Sebastian M. Medvei

                                     Sebastian M. Medvei

                                     Attorney for Plaintiff

MOTION TO DISMISS; MEMORANDUM ISO; DECLARATION RE LR 7-3

## PROOF OF SERVICE

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 3857 Birch Street, #56, Newport Beach, CA 92660. On the date of execution below, I served on the below-identified persons, the document described as:

**NOTICE OF MOTION AND MOTION OF DEFENDANT AVOCADO MATTRESS LLC TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM IN SUPPORT THEREOF; DECLARATION OF SEBASTIAN M. MEDVEI PER LR 7-3; CERTIFICATE OF WORD COUNT**

[X]    (ELECTRONIC SERVICE) I electronically served the below addressee(s) via the CM/ECF system:

Jonas Jacobson
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Email:            jonas@dovel.com

*(Attorney(s) for Ashley Islas and Elizabeth Amill)*

[X]    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 25, 2025 at Newport Beach, California.

/s/ Sebastian M. Medvei

Sebastian M. Medvei

MOTION TO DISMISS; MEMORANDUM ISO; DECLARATION RE LR 7-3